IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHAWNA CLARIDGE**,

    Plaintiff,

v.

**ROBERT A. KELLER**,

    Defendant.

Civ. No. 6:23-cv-00080-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Shawna Claridge bring this tort claim after suffering a dog bite on property that was owned by Defendant, Robert Keller. Mr. Keller brings this Motion for Summary Judgment on all claims in Plaintiff's First Amended Complaint. Def.'s Mot. Summ. J., ECF No. 20. Because no reasonable juror could find that Mr. Keller failed to meet his duty under the circumstances, his Motion for Summary Judgment is GRANTED.

## BACKGROUND

On January 11, 2021, Plaintiff suffered an attack by a dog at a property known as 13621 Myrtle Road, Myrtle Creek, Oregon. Def.'s Answer ¶ 2, ECF No. 10. The property was owned by Defendant, Mr. Keller. *Id.* Ms. Keller and Mr. Keller had been married but were separated at

1 – OPINION AND ORDER

the time of Ms. Keller's death on January 1, 2021. Gabin Decl. Ex. 1, at 20. At the time of Ms. Keller's death, she had exclusive possession of the property, and it had been her residence for 10-12 years. Mr. Keller resides in Southern California. *Id.* at 14, 22.

Plaintiff, Ms. Claridge, is the estranged wife of Ms. Keller's nephew, Douglas Claridge. She was attending post-funeral gathering celebrating the life of Ms. Keller at the property when the incident occurred. Gabin Decl. Ex. 2, at 12.

Prior to her marriage with Mr. Keller, Ms. Keller had four adult children: Garret, Dustin, Branden and Chelsea. *Id.* at 13. According to Plaintiff, Garret lived in a remodeled barn on the property for an unspecified period at the time of his mother's death. *Id.* at 39-50. Plaintiff also testified that Mr. Keller's other stepchildren came to visit the property when Ms. Keller's death was imminent and remained on the property after she passed away. *Id.* at 16. Mr. Keller testified that, at the time of Ms. Keller's death, he was not aware of anyone else living on the property and believed that Ms. Keller lived alone. Gabin Decl. Ex. 1, at 14. According to Mr. Keller, Ms. Keller had told him that she did not want her children on the property due to their drug use. *Id.* at 26.

When Ms. Keller passed away on January 1, 2021, Mr. Keller drove from Southern California to the property. *Id.* at 49. When he arrived, Ms. Keller's children were in the front yard of the property discussing their mother's burial. *Id.* Mr. Keller called the appropriate authorities and made arrangements to have the body removed from the property and for burial. *Id.* at 40-41. It is Mr. Keller's testimony that he also changed the locks on the gate to the driveway, the front door, and the back door to prevent people from entering, although Plaintiff disputes whether this occurred the day of Ms. Keller's death or weeks later. *Id.* at 35-37. At some

time after his initial visit to the property, Mr. Keller learned that Ms. Keller's children were still on the property. He contacted them and demanded that they leave. *Id.* at 50.

According to Plaintiff, it was well understood by all the stepchildren that Ms. Keller had engaged a caretaker to care for the property, and that the caretaker was often accompanied by the dog at issue is this dispute. Gabin Decl. Ex. 2, at 35.

The incident at issue occurred at the property of Mr. Keller on January 11, 2021, the day of the burial. Plaintiff decided to drive to the burial service with several others. Gabin Decl. Ex. 2, at 12. After the funeral and burial services, Plaintiff traveled to the Keller property for a gathering, at the invitation of Ms. Keller's son, Garret. *Id.* The gathering was attended by Garret, Dustin and Brandon, other relatives, and friends of Ms. Keller. *Id.* at 23. Defendant Mr. Keller was not at this event and was not aware that it was taking place on the property *Id.* at 69.

When Plaintiff arrived at the property, there were numerous people already gathering. *Id.* at 34. According to Plaintiff, the caretaker was there with his dog and issued a general warning not to interact with the dog because it had attacked one of Ms. Keller's children the day prior. *Id.* at 51. Sometime later, and without warning, the dog bit Ms. Claridge while she was sitting in the living room by the fireplace. *Id.* at 63. According to Laura Claridge, the caretaker whistled at the dog and the two subsequently ran out the back door and across the river. L. Claridge Decl. at 32. After the attack, Plaintiff was transported by ambulance to and treated at a local hospital.

## STANDARDS OF REVIEW

A court must grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving

party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I.   Plaintiff's Status on the Property

The parties dispute the status of Plaintiff on the property—whether she was an "invitee" or a "trespasser" for the purposes of Oregon tort law. Plaintiff argues that she was an invitee, meaning that she was given an express or implied invitation by the possessor to enter the property. *Parker v. Hult Lumber & Plywood Co.*, 260 Or 1, 8 (1971). Plaintiff asserts that Defendant gave his implied consent to the stepchildren to be on the premises and host the gathering. Opp'n to Mot. 8. Taking the position that the Defendant did not take the necessary steps to oust the stepchildren from the property during the time of Ms. Keller's death, Plaintiff argues that there is a genuine issue of fact as to whether she was a trespasser or invitee because Defendant impliedly consented to the stepchildren being on the property. Opp'n to Mot. at 9-10. Defendant disputes this status and maintains that Plaintiff was a trespasser because the stepchildren did not have authority or consent from Mr. Keller to be on the property. He asserts that he owes no duty to Plaintiff and the injury she suffered.

Here, a determination as to whether the Plaintiff is an invitee or trespasser is not dispositive to the Court's ruling. The record, as to this issue, remains unclear.

## II. Defendant's Duty

Even if Plaintiff were an invitee on the premises, her claim would fail as a matter of law. To establish liability under an invitee theory where the property owner does not live on the premises, a plaintiff must show that the property owner knew or should have known about the activity, and knew or had reason to know that the activity would unavoidably involve an unreasonable risk of harm. *See Park v. Hoffard*, 315 Or 624, 632 (1993). In *Park*, the plaintiff was bitten by a dog off the premises of an apartment and sought to attach liability to the landowner for allowing the tenant to maintain a dangerous dog. Relying on the Second Restatement of torts and Oregon case law, the Oregon Supreme Court set forth the rule that a landlord can be liable for the tenant's activity of harboring a dog only if:

> (1) the landlord, at the time of entering into a lease, at the time of renewing a lease or a periodic tenancy, or at any time during a tenancy at will or other tenancy that the landlord is able to terminate unilaterally, consents to such activity or knows that it will be carried on, and (2) the landlord knows or has reason to know that the activity will unavoidably involve an unreasonable risk of harm to persons off the rental property.

*Park*, 315 Or at 632. This court in 2010 applied *Park* in a tort dispute in which the plaintiff was attempting to attach liability to a landlord for the conduct of a guest of the tenant, who allegedly caused a fire. *Auto. Ins. Co. of Hartford, Connecticut v. Abel*, No. CV 08-1004 AC, 2010 WL 2643412 (D. Or. June 30, 2010). Relying on *Park*, the court concluded that the landlord needed to have actual or constructive knowledge of the presence of the guest and the unreasonable risk of harm that the guest presented. *Id.*. The court rejected the liability claim because there was no

evidence to support a finding that the landlord knew about the person being in the apartment. *Id.* at 10.

Here, the Court similarly concludes that Mr. Keller is not liable for the dog bite that occurred on the premises and is entitled to judgment as a matter of law. Plaintiff must show that the landlord knew or should have known of the dangerous activity on the property, as well as the risk it posed to Plaintiff.

While Plaintiff agrees that Mr. Keller had no knowledge of the dog, Plaintiff contends that Defendant failed to articulate "a clear command to his stepchildren to get off the property and tak[e] other reasonable steps to secure the property against their entry." Opp. Mot. at 9. Plaintiff argues that Defendant knew that his stepchildren were "drug addicted, irresponsible and without common sense; their mother also knew this and had communicated her concerns to defendant." *Id.* at 3. Because of this propensity for danger, Plaintiff argues, Defendant had a duty to evict them by calling the police for assistance and promptly changing the locks on all gates, doors and window, as well as boarding up the property. *Id.* Alternatively, if he did not do this, Defendant had a duty to notify "all who might enter the premises that the occupants were squatters, drug addicted, unstable, and likely to make poor judgments," given that the "extreme lack of commonsense among Garret, Dustin and Brandon is obvious." *Id.*

Plaintiff's characterization of the risk posed by the stepchildren and its nexus with the dog attack lacks evidentiary basis. For one, testimony from Plaintiff, which goes unrebutted, shows that Defendant Mr. Keller had no actual knowledge of the dog, its presence on the premises, its owner, or its allegedly dangerous propensities. Gabin Decl. Ex. 2, at 51-52. Second, Defendant testified that he changed the locks on the premises when he initially arrived at the

property. Def.'s Reply at 8. Although Defendant's deposition appears difficult to decipher, Defendant in his reply briefing clarifies that his testimony is that he locked the premises the day he arrived. *Id.*

But even if Plaintiff's claim of implied consent were to hold up—i.e., even if Defendant knew that the stepchildren were living on the property and failed to take action to remediate it—Plaintiff overstates the danger posed by the stepchildren and their connection to the dog attack. Plaintiff relies on the stepchildren's prior use of drugs to, in effect, to claim that the dog attack was foreseeable. Because of the stepchildren's drug use, Plaintiff infers that they are irresponsible and lack common sense. On this basis, Plaintiff asserts that a reasonable juror might conclude that it was foreseeable that the stepchildren would have a dangerous gathering on the property that would subject Plaintiff to the sort of dog attack that she suffered. Yet the stepchildren's purported drug use does not necessarily imply that they pose a general and foreseeable kind of risk. It is also not clear that the behavior they were engaging in was unreasonable and unavoidably dangerous. The stepchildren were simply having a post-funeral gathering for their mother at her residence where she had recently passed. And as Plaintiff acknowledges, the stepchildren were not responsible for the dog and did not bring the dog on to the property.

For these reasons, the Court concludes that no reasonable juror would find that Mr. Keller had actual or constructive knowledge of the presence of the stepchildren on the property to hold a post-funeral gathering *and* that their presence on the property carried an unavoidable and unreasonable risk of harm to those on the property.

## CONCLUSION

Defendant Robert Keller's Motion for Summary Judgment (ECF No. 20) is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of August, 2024.

         _s/Michael J. McShane_____
         **Michael J. McShane**
         **United States District Judge**